IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **RAYMOND WASHINGTON, JR.,** | § § § | |
| Plaintiff, | § § | |
| v. | § § | No. 3:13-CV-3060-L (BF) |
| **SEARS LOGISTICS SERVICES, INC., ART ALMAZAN, and JEFFERY WHITTAKAR,** | § § § § § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

The District Court referred Defendants' Motion to Abate and Compel Arbitration to the United States Magistrate Judge for proposed findings and a recommendation for disposition. For the following reasons, Defendants' motion should be granted.

## Background

In this employment discrimination action, Plaintiff Raymond Washington, Jr. contends that he was unlawfully terminated from his position as a "Lead Material Handler" with Defendant Sears Logistics Services, Inc. ("SLS"). Pl. Orig. Compl. at 3, ¶ 9. Succinctly stated, Plaintiff alleges that SLS's Facility Manager Defendant Art Almazan retaliated against him for complaining about Almazan's hostile actions towards Plaintiff and other employees and for refusing to participate in false accusations against an African-American delivery driver. *Id.*, ¶¶ 10-12. Almazan accused Plaintiff of theft and placed him on suspension without pay. *Id.*, ¶12. SLS later terminated Plaintiff, and Almazan and SLS's Loss Prevention Manager Defendant Jeffery Whitaker filed a theft charge

1

against Plaintiff with the Grapevine Police Department. *Id.* at 3-4, ¶¶13, 15. Defendants also allegedly told other employees that Plaintiff had committed theft. *Id.*, ¶ 16.

Plaintiff filed the instant lawsuit on August 5, 2013 asserting claims against SLS for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981, and for misrepresentation and negligence under state law. *Id.* at 4-6, ¶¶ 19-32. Plaintiff also asserts claims against Almazan and Whitaker in their individual capacities for defamation under state law. *Id.* at 6-7, ¶¶ 33-35. Defendants filed separate answers denying Plaintiff's allegations and asserting several affirmative defenses, including the defense that the parties previously agreed that Plaintiff's claims must be resolved through binding arbitration. SLS/Almazan Ans. at 4, ¶ 1; Whitaker Ans. at 4, ¶ 1. Defendants then filed the instant motion to abate this action and compel arbitration of all of Plaintiff's claims.

Defendants' motion is predicated upon an Arbitration Policy/Agreement ("Agreement"), which provides in pertinent part:

> [A]ll employment-related disputes between you ("Associate") and Company that are not resolved informally shall be resolved by binding arbitration in accordance with the terms set forth below. This Agreement applies equally to disputes related to Associate's employment raised by either Associate or by Company.
>
> * * *
>
> Except as it otherwise provides, *this Agreement applies, without limitation, to disputes regarding the employment relationship*, trade secrets, unfair competition, compensation, pay benefits, breaks and rest periods, termination, discrimination, or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, as amended, Family and Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act, Genetic Information Non-Discrimination Act, and any and all state

2

> statutes addressing the same or similar subject matters, and all other state or federal statutory and common law claims ("Covered Claims").
>
> This Agreement is intended to apply to and cover all such disputes that Associate has against Company that Associate could otherwise file in court and all such disputes Company has against Associate that Company could otherwise file in court. This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. . . . This Agreement will continue to apply after Associate is no longer employed by Company.

Def. Mot. App. (Doc. 19) at 8-9 (emphasis added). The Agreement also provides that it is "enforceable under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA")," and that "[i]f the FAA is found not to apply, then this Agreement is enforceable under the laws of the state in which Associate is employed." *Id.* at 9.

Plaintiff filed a response to Defendants' motion opposing arbitration on the ground that his claims are exempt from arbitration under the FAA's exception for "transportation workers." Pl. Resp. at 2-3. The issues have been fully briefed by the parties, and the motion is ripe for determination.

## Legal Standards and Analysis

The threshold question in ruling on a motion to compel arbitration is whether the parties agreed to arbitrate the particular type of dispute at issue. *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012) (citing *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007)). To answer that question, the Court considers: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* Courts apply ordinary state-law principles governing the

3

formation of contracts to determine whether an agreement to arbitrate is valid. *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008). If the parties agreed to arbitrate, the Court must then consider whether any federal statute or policy renders the claims nonarbitrable. *Wash. Mut. Fin. Group, L.L.C., v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004).

Plaintiff does not dispute that the Agreement is valid or that his claims fall within the scope of the Agreement. Instead, Plaintiff contends that the FAA does not require arbitration of his claims because he is a transportation worker. Section 1 of the FAA specifically excludes from arbitration "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1 (emphasis added). The Supreme Court has interpreted this provision to exempt from the FAA employment contracts of transportation workers "actually engaged in the movement of goods in interstate commerce." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112 (2001). Plaintiff argues his claims are exempt from arbitration because his primary daily job duties included overseeing and assisting with the loading and unloading of delivery trucks that transported customer goods within Texas and Oklahoma. Pl. Resp. App., Washington Decl. at 1, ¶ 3. Although Defendants initially conceded that "Plaintiff worked as a Lead Material Handler *responsible for loading and unloading products to be shipped to customers in interstate commerce*," Def. Br. at 3 n.1 (emphasis added), they apparently dispute that Plaintiff is a transportation worker for purposes of the FAA. Def. Reply at 2-4. According to Defendants, Plaintiff is not a transportation worker because he did not physically load or unload any products onto or off a delivery truck. *Id*. at 3 n.1. Nor did he operate a delivery truck or supervise delivery truck drivers. *Id.* at 4.

The Court, however, need not reach the issue of whether Plaintiff is a transportation worker such that the exemption from Section 1 of the FAA applies. The Agreement expressly provides that "[i]f the FAA is found not to apply, then this Agreement is enforceable under the laws of the state in which Associate is employed." Def. Mot. App. at 9. Plaintiff worked for SLS in Texas. The Texas Arbitration Act ("TAA"), Tex. Civ. Prac. & Rem. Code §§ 171.001, *et seq.*, does not exempt transportation workers' contracts from arbitration. *Long v. BDP Int'l, Inc.*, 919 F. Supp. 2d 832, 850 (S.D. Tex. 2013) (enforcing arbitration agreement against transportation company's logistics coordinator because TAA does not exclude transportation workers or any other class of employees from its coverage); *see also Shanks v. Swift Transp. Co. Inc.*, No. L-07-55, 2008 WL 2513056, at *4 (S.D. Tex. June 19, 2008) ("[E]ven if the FAA is inapplicable, state arbitration law governs.").

Under Texas law, an employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employee received notice of the employer's arbitration policy and accepted it. *In re Dallas Peterbilt, Ltd., LLP*, 196 S.W.3d 161, 162 (Tex. 2006) (per curiam). Here, the evidence submitted by Defendants shows that SLS presented Plaintiff with the Agreement in 2012, in connection with the company's launch of a new policy encouraging the resolution of employment-related claims through arbitration. Def. Mot. App. at 2, ¶ 5 & 5, ¶¶ 22-23. On July 17, 2012, Plaintiff affirmatively acknowledged his receipt of the Agreement and accepted its terms and conditions. *Id.* at 5, ¶ 23 & Exh. C. Plaintiff failed to revoke his acceptance within the 30-day period SLS provided for him to opt out of the Agreement, and he continued to work for SLS without objection to the Agreement until his termination in October 2012. *Id.* at 5, ¶¶ 25-26; *see also* Pl. Resp. App., Washington Decl. at 1, ¶ 2. Plaintiff's continued employment further constitutes acceptance of the Agreement. *In re Dillard Dep't Stores*, 198 S.W.3d 778, 780-81 (Tex. 2006)

(at-will employee who receives notice of an employer's arbitration policy and continues working with knowledge of the policy accepts the terms as a matter of law).  Although Plaintiff now avers that he has "no knowledge of reading an arbitration agreement, or being required to opt out of such an agreement," Defendants' evidence establishes that Plaintiff received notice of the Agreement and accepted it.

Plaintiff's claims against SLS are also clearly within the broad scope of the Agreement, which provides that the parties' agreement to arbitrate "applies, without limitation, to disputes regarding the employment relationship, . . . termination, discrimination, or harassment . . . and all other state or federal statutory and common law claims." Def. Mot. App. at 8-9.  The scope of the Agreement further extends to Plaintiff's claims against the individual defendants because they are agents of SLS and all of their allegedly wrongful acts relate to their behavior as agents of the company. *Ascendant Anesthesia PLLC v. Abazi*, 348 S.W.3d 454, 462 (Tex. App.--Dallas 2011, no pet.) (holding that plaintiff's claims against defendant former co-employee were arbitrable under arbitration agreement between employer and plaintiff because defendant former co-employee was an agent of employer); *see also McMillan v. Computer Translation Sys. & Support, Inc.*, 66 S.W.3d 477, 481 (Tex. App.--Dallas 2001, orig. proceeding) ("When the principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are covered by that agreement.").

Plaintiff does not argue that the Agreement is unenforceable as a matter of law or public policy.  Indeed, employment-related claims such as the ones at issue in this case are often held to be subject to mandatory arbitration agreements.  *See, e.g., Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 748 (5th Cir. 1996) (Title VII claims subject to mandatory arbitration provision); *Oubre v. Lundy*

6

*Serv., Inc.*, No. 3:98-CV-2529-D, 1998 WL 907020, at *2 (N.D. Tex. Dec. 18, 1998) (same as to claims arising under Section 1981); *In re Choice Homes, Inc.*, 174 S.W.3d 408, 413 (Tex. App.--Houston [14th Dist.] 2005, orig. proceeding) (former employees' claims against former co-workers for defamation based on comments as to why former employer terminated former employees were covered by arbitration agreement between former employee and former employer). Accordingly, Defendants' request to compel arbitration should be granted.[1]

Finally, a district court may dismiss, rather than stay, an action where all issues are properly subject to arbitration. *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 678 (5th Cir. 1999); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). Because all the claims asserted by Plaintiff fall within the scope of the Agreement, the only possible role a court could have would be to review the arbitration award once the proceedings are concluded. *See Alford*, 975 F.2d at 1164. Under these circumstances, the case should be dismissed rather than stayed. *See Rogers v. Epic Health Serv., Inc.*, No. 3:13-CV-1752-O, 2013 WL 5226826 (N.D. Tex. Sep. 17, 2013) (dismissing case without prejudice in favor of arbitration); *Redish v. Yellow Transp., Inc.*, No. 3:07-CV-l065-O, 2008 WL 2572658, at *6 (N.D. Tex. Jun. 24, 2008) (same).

## RECOMMENDATION

For the foregoing reasons, the District Court should GRANT Defendants' motion (Doc. 20) and DISMISS this case without prejudice in favor of arbitration.

---

[1] As part of their motion, Defendants seek their fees and costs incurred as a result of Plaintiff's "intransigence" and for "squander[ing] this Court's time and resources by insisting on this Motion." Def. Mot. at 9. However, Defendants have not cited any authority which enables the Court to award fees or costs incurred in bringing a motion to compel arbitration. In the absence of such authority, the Court should decline to award fees and costs. *Yi Su v. T-Mobile USA, Inc.*, No. 3:04-CV-0654-L, 2004 WL 1348740, at *3 n.3 (N.D. Tex. June 15, 2004) (similarly declining to award fees and costs in connection with bringing successful motion to compel arbitration).

SO RECOMMENDED, April 22, 2014.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a de novo determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).